18292

James L. COLLINS, Respondent-Appellant, v. James Monroe JOHNSON and Queen City Coach Company, Appellants

(139 S. E. (2d) 915)

216

*Messrs. James P. Mozingo, III, D. Kenneth Baker* and *Thomas E. Smith, Jr.,* all of Darlington, *for Respondent-Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Appellants,*

218

*Messrs. James P. Mozingo, III, D. Kenneth Baker* and *Thomas E. Smith, Jr.,* all of Darlington, *for Respondent-Appellant,*

January 13, 1965.

Bussey, Justice:

In this action the plaintiff Collins seeks to recover damages for injuries to his person and property arising out of a collision between his automobile and a bus of the defendant Queen City Coach Company driven by its servant, the defendant Johnson.

Upon the trial of the case the plaintiff introduced in evidence various schedules of the defendant coach company for its buses traveling the same route as that of the bus involved in the accident. Subsequently, the plaintiff moved to amend his complaint, which alleged no independent act of negligence on the part of the master, so as to charge the defendant coach company with negligence, recklessness, willfulness and wantonness in scheduling its stops so as to make compliance with applicable speed laws impossible. The court denied this motion to amend, and from this ruling there was no appeal. Timely motions were made by both defendants for nonsuits and directed verdicts but were refused, and the cause was submitted to the jury under a charge, not excepted to, predicating liability of the coach company, if any, solely upon the doctrine of respondeat superior.

The jury returned a verdict as follows:

"We find for the plaintiff actual $2,200.00, punitive $25,-000.00 against Queen City Coach Company. J. E. Garland, Foreman."

No objection to this verdict, nor any motion with respect thereto, was made by any of the parties before the jury was discharged. The defendant coach company thereafter moved to vacate the verdict of the jury for punitive damages against that defendant, on the ground that the liability of the coach company, being based only on the doctrine of respondeat superior, could be no greater than the liability of Johnson. Both defendants moved for judgment *non obstante veredicto*

on the same grounds urged in support of their motions for nonsuits and directed verdicts. Additionally, the defendant coach company further moved for a reduction in the amount of punitive damages awarded, failing its other motions, upon the ground that the same was excessive.

Thereafter, the trial judge filed an order wherein he construed the foregoing verdict as being for actual damages against both defendants in the amount of $2,200.00 in the light of his charge with respect to actual damages, from which construction there is no appeal. The judge further construed the remainder of the verdict as being against Queen City Coach Company alone for punitive damages in the amount of $25,000.00 but ruled in connection therewith that said defendant had waived its right to question the defect in the verdict, since no objection to the verdict was made before the jury was discharged. His order denied all motions of the defendants, except to order a new trial *nisi*, should plaintiff fail to remit the sum of $10,000.00 from the verdict for punitive damages. Instead of remitting, the plaintiff appealed, so that the present effect of his Honor's order is to order a new trial absolute. Both defendants also appeal from the foregoing order.

We shall first consider and dispose of the appeal of the plaintiff. It is urged by the plaintiff that his Honor, in construing the verdict, should have stricken therefrom the words "against Queen City Coach Company" as surplusage and construed the verdict as being against both defendants for actual and punitive damages. The simple answer to this contention is that had his Honor done so, such would have been tantamount to the judge himself writing a verdict against the defendant Johnson in the amount of $25,000.00, instead of the jury returning a verdict to such effect.

The plaintiff further asserts error in that the trial court abused its discretion in reducing the verdict for punitive damages, it being contended that the verdict was not excessive, was based upon the evidence of willfulness

and recklessness of the defendants, and that in reducing the verdict the trial court invaded the province of the jury and deprived the plaintiff of his right to trial by a jury. It is well settled in this state that the trial judge has a wide discretionary power to order a new trial *nisi* when, in his view of the evidence, the verdict of the jury is excessive in the sense that the same is unduly liberal. *Fennell v. Littlejohn,* 240 S. C. 189, 125 S. E. (2d) 408; *Johnson v. Life Ins Co. of Ga.,* 227 S. C. 351, 88 S. E. (2d) 260, 55 A. L. R. (2d) 813. We see nothing in the record to indicate that there was here any abuse of discretion on the part of the trial judge in reducing the amount of the punitive damage verdict and ordering a new trial, conditioned on the failure of the plaintiff to remit a portion of the punitive damage verdict.

Both defendants contend that the trial court erred in refusing to direct a verdict in favor of the defendants, upon the ground that the only reasonable inference to be deduced from the evidence was that the plaintiff was guilty of contributory negligence or recklessness. In considering this question, it is elementary that the evidence and all inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff.

The collision which gave rise to this cause of action occurred on May 6, 1961, shortly after the "Rebel 300" automobile race held in Darlington, South Carolina that afternoon, which race was attended by the plaintiff. Upon leaving the area of the race track, plaintiff intended to go to Camden, South Carolina, but due to the controlled direction of the heavy traffic, found himself traveling north on Highway 52 in the direction of Society Hill, and some four or five miles out of Darlington, stopped off of said highway and to the east thereof at Moody's Store, for the purpose of obtaining directions as to how to get back on a road which would take him to Camden. The said store is located at the intersection of State Road 16-36, which intersects Highway 52 on the westerly side thereof opposite Moody's Store.

Upon asking directions, plaintiff ascertained that State Road 16-36 would take him in the direction he wanted to travel. At the time, northbound traffic on Highway 52 was extremely heavy as the result of the automobile race, being almost bumper to bumper, and plaintiff had to wait a while before he could get a break in the north-bound traffic so as to be able to cross Highway 52. When he did get such a break, he proceeded across said highway for the purpose of entering State Road 16-36. At the time, the bus was approaching in a southerly direction on Highway 52, and there is evidence to the effect that the impact occurred between the front end of the bus and the right side of plaintiff's automobile, the various witnesses placing the actual point of the impact on State Road 16-36 at varying distances off of Highway 52.

There was evidence to the effect that the bus was being operated on a schedule which could not possibly be kept and yet comply with the state's speed laws; that it was behind time and that it was traveling at a speed of sixty to seventy miles per hour as it approached the particular intersection in the face of very heavy traffic coming from Darlington. Highway 52, to the north of the site of the collision, is straight with the view thereof unobstructed for quite a considerable distance.

In brief, the defendants' contention is that the plaintiff should have seen the oncoming bus; that under all of the circumstances he should have seen that he could not cross the highway with safety and should have yielded the right-of-way to the bus. It is urged that his failure to so observe and yield the right-of-way amounted to negligence, recklessness, willfulness and wantonness as a matter of law and that such contributed to, or was solely the proximate cause of the collision.

While much of the evidence is in sharp conflict, there is evidence to the effect that the bus was as much as two hundred fifty yards north of the point of collision when the plaintiff started to cross the highway; that plaintiff did look and see the bus and, after observing the same, concluded that he had plenty of opportunity to cross the highway in safety

before the bus arrived at the point. There was, we think, ample evidence from which the jury could have reasonably inferred that the plaintiff exercised due care in attempting to cross the highway and that but for the careless, negligent, reckless or willful conduct on the part of the defendants, plaintiff's crossing of the highway would have been completed without incident.

While we have not reviewed in detail all of the evidence, we do not think that further review thereof, or the citation of authority, is here necessary to show that the trial court properly submitted to the jury the issues of negligence and willfulness on the part of the defendant; contributory negligence and willfulness on the part of the plaintiff, and proximate cause of the collision and damage.

We now reach what we regard to be the primary issues raised by the defendants. It is contended by the coach company that the verdict for punitive damages against it alone amounted to an exoneration of the defendant Johnson of any willfulness, and that since the servant has been so exonerated, the master cannot be held liable for punitive damages, the cause being brought and tried solely upon the doctrine of respondeat superior. It is contended, accordingly, that the trial judge should have set the verdict of punitive damages aside and ordered judgment for both defendants with respect to punitive damages. The defendant Johnson contends that he has been exonerated of any willfulness, and that since he has been so exonerated, and the amount of actual damages for which he is liable has been fixed by the jury, the trial court had no right or power to order a new trial as to him.

In support of these contentions the defendants cite virtually every case which has ever been decided by this court holding that where both master and servant are sued jointly, a verdict against the master alone is illogical and cannot stand where the case is based solely on the doctrine of respondeat superior, with no independent act of negligence on the part of the master being alleged or proved. Particular reliance is placed upon the case of *Kirby v. Gulf Refining Co.,* 173 S. C. 224,

175 S. E. 535, an action for slander wherein a verdict for actual damages was found against both defendants and punitive damages against the master alone, and wherein the verdict against the master alone for punitive damages was reversed.

The order of the trial judge apparently concluded that the verdict here for punitive damages against the master alone was illogical and could not have stood had the defendant coach company made a motion thereabout before the jury was discharged, but that the failure of the defendant to object to the verdict waived the defect in the verdict.

In support of his holding to the effect that the failure of the defendant to object before the jury was discharged waived the defect in the verdict, his Honor cited the following cases. *Deese v. Williams and State Highway Dept.*, 237 S. C. 560, 118 S. E. (2d) 330; *Bethea v. Western Union*, 97 S. C. 385, 81 S. E. 675; *Rhodes v. Southern Rwy.*, 139 S. C. 139, 137 S. E. 434; *McAlister v. Thomas & Howard Co.*, 116 S. C. 319, 108 S. E. 94; *Rhame v. City of Sumter*, 113 S. C. 151, 101 S. E. 832; *Thornhill v. Davis*, 121 S. C. 49, 113 S. E. 370, 24 A. L. R. 617.

The cited cases all contain statements or holdings to the effect that the failure to object to the "form" of a verdict amounts to a waiver, but in none of these cases, apparently, did the court have under consideration or discuss the distinction between the "form" of a verdict and the "substance" of a verdict. However, in the later case of *Chapman-Storm Lumber Corp. v. Minnesota-South Carolina Land & Timber Co.*, 183 S. C. 31, 190 S. E. 117, a case wherein a verdict against the master alone was rendered, liability being predicated solely on the dectrine of respondeat superior, this court said,

"The question in this case is not as to the form of the verdict. The verdict, under the facts of this case and the law as charged, was complete and not subject to be reformed in any particular. It is a matter of substance and not of form, whether it can stand in the face of the testimony in the case."

In that case the judgment below was reversed and the case remanded for a new trial.

We agree with the conclusion of the trial judge that ■ the verdict here for punitive damages against the master alone is illogical and that the same should not be allowed to stand. We do not conclude, however, as the trial judge apparently did, that the vice or defect in the verdict was only a matter of form, which was waived by failure to object thereto before the discharge of the jury. This brings us to the question of the nature of the relief which should be granted.

Neither of the defendants moved for a new trial ■ absolute, but the defendant coach company did move, in the alternative, for a new trial *nisi* which was granted. The plaintiff having failed to remit as required by the order for a new trial *nisi,* the said order now amounts to an order for a new trial absolutely. *Barnett v. Gottlieb,* 105 S. C. 67, 89 S. E. 641. Under all of the circumstances of this case, we are inclined to the view that the present effect of his Honor's order is to grant both defendants all of the relief to which they are entitled, even though we are not in full accord with the logic by which the result was reached.

The defendants assume that the effect of the verdict here was to exonerate the defendant Johnson, as a matter of fact, of any willfulness, and that, accordingly, both defendants are entitled to entry of a final judgment exonerating them from any punitive damages. For the reasons hereinafter set forth, we do not think this assumption on the part of the defendants to be necessarily correct.

In some of the decisions of this court, in cases based solely on the doctrine of respondeat superior, wherein a verdict against the master alone was rendered, the relief granted on final disposition of the case was a judgment in favor of both defendants. See for instance, *Jones v. Southern Rwy.,* 106 S. C. 20, 90 S. E. 183; *Carter v. Atlantic Coast L. R. Co.,* 194 S. C. 494, 10 S. E. (2d) 17, *Kirby v. Gulf Refining Co., supra.*

In other cases where the question was involved the relief granted was a new trial. See for instance, *Chapman-Storm Lumber Corp v. Minnestota—South Carolina Land &Timber Co., supra; Cherry v. Singer Sewing Machine Co.,* 165 S. C. 451, 164 S. E. 126; *Sparks v. Atlantic Coast L. R. Co.,* 104 S. C. 266, 88 S. E. 739.

While not all of the decisions clearly reflect precisely why the particular relief was granted in the particular case, we conclude that the nature of the relief granted in each case was dependent upon the state of the record in the particular case, the nature thereof, the evidence, and, at least to some extent, the nature of the motions made therein, although some of the decisions do not even reflect the nature of the motions made below.

We shall not here attempt to review in detail all of the pertinent decisions. Suffice it to say, that no decision has come to our attention wherein a judgment in favor of the defendants has been ordered, rather than a new trial, where there was any suggestion that the verdict exonerating the servant was influenced by either the charge of the trial judge or error in the trial. Here no error in the trial is asserted but we think the jury in reaching the verdict, which cannot be allowed to stand, may well have been influenced by his Honor's charge which was unexpected to. The record does not contain the entire charge, but only excerpts therefrom.

His Honor quite clearly charged the jury with respect to both liability and actual damages that it could make no distinction between the master and the servant. His charge, however, with respect to punitive damages was as follows:

*"Punitive damages being in the nature of punishment they are left to your sound judgment and discretion.* (Emphasis added.) * * * If you find he is entitled to recover punitive damages, too, then you would give a verdict for punitive damages separately against each defendant because you might reasonably infer that the financial ability of one of the

defendants to pay is greater than the other, and if so, you might wish to grade the amount of the punishment according to the ability to pay. * * * Now, if you find that the plaintiff has proven willfulness, wantonness and recklessness and is entitled to recover for that reason, then the form of your verdict would be, 'We find for the plaintiff so many dollars actual damages and punitive damages against the defendant Johnson in a certain amount and against the Queen City Coach Company in a certain amount.' That is, you would have one verdict for actual damages and one verdict against each of the defendants in addition for punitive damages."

While portions of his Honor's charge, with respect to punitive damages, could have been understood by the jurors as a specific direction that some amount of punitive damages had to be found against each of the defendants, in the event plaintiff had proved willfulness, wantonness and recklessness, it does not necessarily follow that lay jurors so understood. Certainly, the jury was not told, specifically, that a finding of punitive damages against the master alone would be invalid if the jury failed to find at least some amount of punitive damages against the servant, and his Honor commenced his discussion of punitive damages by telling the jury, in effect, that the entire matter of punitive damages, not just the amount thereof, was left to the sound judgment and discretion of the jury.

When his Honor's charge with respect to punitive damages is considered as a whole, we think it could well have led an average jury to believe that it had the right to return the verdict which it did, even though it concluded that the defendant Johnson was guilty of gross willfulness. Since the jurors were told that punitive damages were left to their sound judgment and discretion, and were correctly charged that the ability of the respective defendants to pay could be taken into consideration in grading the amount of the punishment, the jurors could well have reasoned that even though Johnson was guilty of willfulness, still under all of the circumstances of the case,

including the ability of the defendant Johnson to pay, a verdict against him for punitive damages, in even a small or nominal amount, would be a punishment which, in their sound judgment and discretion, the jurors did not see fit to inflict. The jurors could have further reasoned, in their sound judgment and discretion, that under all of the circumstances, the coach company alone was able to and should pay the amount of $25,000 by way of punishment, even though Johnson was guilty of willfulness, since there was evidence to support the inference, and the jury could have concluded, that all willfulness on the part of Johnson was committed under the compulsion of his master who required him to operate the bus on a schedule which could not be met and yet comply with the speed laws of the state.

We have previously held that where the charge of the trial judge, unexcepted to by the defendant, left the matter of punitive damages to the discretion of the jury, a verdict for actual damages alone does not have the effect, as a matter of law, of exonerating a defendant from charges of willfulness. *Jumper v. Goodwin,* 239 S. C. 508, 123 S. E. (2d) 857; *Saxon v. Saxon,* 231 S. C. 378, 98 S. E. (2d) 803.

For the foregoing reasons, we cannot say, as a matter of law, that the jury by its verdict intended to and did, as a matter of fact, exonerate Johnson of any willfulness. Accordingly, we think a new trial absolute is the only relief which the defendants, or either of them, are entitled to under the circumstances of this case.

The order of the lower court is, therefore, affirmed as to result and the cause remanded for a new trial.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.