THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.  
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Katharine Smith and Margaret Rittenbury, Individually and on behalf of all similarly situated co-owners of the Dockside Horizontal Property Regime,
Appellants,
v.
Dockside Association, Inc., a non-profit corporation; and Douglas
Berlinsky, Wilbur Burbage, II, Francis G. Cain, Jr., Lydia P. Davidson, William B. Ellison, Grant D. Small, James F. Spann and Jonathan L. Yates,
Respondents.
 
 
 

Appeal From Charleston County
 R. Markley Dennis, Jr., Circuit Court Judge

Unpublished Opinion No. 2005-UP-139
Heard February 9, 2005  Filed February 28, 2005

AFFIRMED

 
 
 
Paul A. Dominick and Christopher A. Ogiba, both of Charleston, for Appellants.
John S. Wilkerson, III, of Charleston; R. Hawthorne Barrett, of Columbia; for Respondents.
 
 
 

PER CURIAM:  In this civil matter, Katharine Smith and Margaret Rittenbury, individually and on behalf of all similarly situated co-owners of the Dockside Horizontal Property Regime (Appellants), instituted this action against Dockside Association, Inc. (the Association), and various individual directors and members of the Board of Directors, alleging the Board and the directors were negligent for improperly discharging their duties to maintain the Dockside facilities and for fiscal mismanagement.  They now appeal the circuit courts grant of summary judgment to both the Association and the individual directors.  We affirm.
FACTS
Dockside is a residential, waterfront condominium community situated on the Charleston Harbor consisting of an eighteen-story building and twenty-one townhouses.  The developers eventually transferred control of Dockside to the non-profit corporation, the Association, which was controlled by an elected Board of Directors.  Since that time, the Association, through its Board, assumed the duty to maintain Dockside, including maintaining the common areas and managing the fiscal affairs of the Association.  The individually named defendants[1] in the underlying lawsuit all served on the Board at various times during the 1990s.  
Throughout that time period, the Board controlled the daily administration of Dockside, including normal maintenance and repairs, and any special situations warranting Board attention.  For example, the Board oversaw the settlement of a construction defect lawsuit, the damage caused by Hurricane Hugo, construction of Docksides piers and bulkheads, and major renovations to the east and west walls of the condominium tower.  When addressing maintenance, repair, or financial decisions, the Board, through its individual directors, routinely sought advice and counsel from various outside professionals and consultants, including: the Associations attorney, Arthur Rosenbloom; the Associations accountant and CPA; the property manager; maintenance personnel; outside engineers; architects; plumbers; electricians; and general contractors.    
In 1999, the Board attempted to address Docksides aging structures.   The Board consulted and hired a forensic architect, Myles Glick, to develop and implement a long-range maintenance plan for Docksides structures.   Glick conducted an extensive investigation, reviewed prior architectural reports, and, on September 15, 2000, issued a detailed report informing the Board that the condominium structures suffered from water intrusion problems as a result of structural defects.  Dockside co-owners were informed about the structural problems and were presented with a proposed two-phase, $21,000,000 renovation plan at an owners meeting on March 6, 2001.  Glick later stated in his affidavit submitted at trial that the damage to Dockside was not caused by lack of routine maintenance and that the Board could not have known about the extent of the structural problems during the 1990s because the structural damage was not visible until the outer stucco had been removed during Glicks investigation.  
On December 31, 2001, Appellants filed the underlying action against the Association and individual past and present directors from the Board, alleging negligence and gross negligence in the performance of their duties, including maintenance, making repairs, and managing Association funds.  The Board presented all the co-owners a special assessment to cover the necessary repair costs on the associations damaged structures in March 2002.  Although the pendency of Appellants lawsuit initially led the co-owners to delay approval of the special assessment, the co-owners eventually passed the special assessment and the repair work began.   
After the dismissal of a separate federal declaratory judgment action brought by the Associations liability insurance carrier, the Association and the individual directors moved for summary judgment in the underlying action on February 19, 2003.  The circuit court granted summary judgment to the individual directors, finding they discharged their duties in good faith, with care, and in a manner reasonably believed to be in the best interest of the corporation.  Thus, the court found, the individual directors were protected from liability by South Carolina Code section 33-31-830.  The court denied summary judgment to the Association, finding the statute only applied to individual directors, not the corporation itself.  Upon motions for reconsideration filed by both sides, the circuit court granted summary judgment to the Association, finding the business judgment rule insulated the directors as well as the corporate entity from any liability.  The court denied Appellants motion for reconsideration.  This appeal followed.
STANDARD OF REVIEW
In reviewing the grant of a summary judgment motion, an appellate court must apply the same standard applied by a circuit court pursuant to Rule 56(c), SCRCP.  Dawkins v. Fields, 354 S.C. 58, 69, 580 S.E.2d 433, 438-39 (2003).  Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Baughman v. Am. Tel. & Tel. Co., 306 S.C. 101, 114-15, 410 S.E.2d 537, 545 (1991).  In determining whether summary judgment is appropriate, the evidence and its reasonable inferences must be viewed in the light most favorable to the nonmoving party.  Dawkins, 354 S.C. at 69, 580 S.E.2d at 439.  Because summary judgment is a drastic remedy, it should not be granted until the opposing party has had a full and fair opportunity to complete discovery.  Id.  However, the nonmoving party must demonstrate that further discovery will likely uncover additional relevant evidence and that the party is not attempting to engage in a fishing expedition.  Id.; Baughman, 306 S.C. at 112, 410 S.E.2d at 544.
LAW/ANALYSIS
I.  Individual Directors
Appellants argue the circuit court improperly granted summary judgment to the individual directors because the court misinterpreted and misapplied section 33-31-830.  We disagree. 
Section 33-31-830 provides the applicable standard of care for directors of non-profit corporations in the discharge of their duties.  The section provides:

A director shall discharge his duties as a director, including his duties as a member of a committee:
 
 
 
 (1)
 in good faith;
 
 
 (2)
 with the care an
 ordinarily prudent person in a like position would exercise under
 similar circumstances; and
 
 
 (3)
 in a manner the director
 reasonably believes to be in the best interests of the corporation.
 
 
 

S.C. Code Ann. § 33-31-830(a) (Supp. 2004).  The section clarifies the general standard by expressly allowing directors to rely on outside sources for guidance, providing, in pertinent part:

In discharging his or her duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:
(1) one or more officers or employees of the corporation who the director reasonably believes is reliable and competent in the matters presented;
(2) legal counsel, public accountants, or other persons as to matters the director reasonably believes are within the persons professional or expert competence.

S.C. Code Ann. § 33-31-830(b) (Supp. 2004).  However, where a director has other knowledge that makes a directors reliance on outside experts unwarranted, the director is not acting in good faith.  S.C. Code Ann. § 33-31-830(c) (Supp. 2004).  Subsection (d) states the following safe harbor provision: A director is not liable to the corporation, a member, or any other person for any action taken or not taken as a director, if the director acted in compliance with this section.  S.C. Code Ann. § 33-31-830(d) (Supp. 2004).  
The official comments to section 33-31-830 demonstrate the legislatures intention to provide considerable deference to the informed decisions of directors of a nonprofit corporation:  The directors need not be right, but they must act with common sense and informed judgment.  The duty of care recognizes that directors are not guarantors of the success of investments, activities, programs, or grants.  It allows leeway and discretion in exercising judgment.  S.C. Code Ann. § 33-31-830, cmt. 2.  Comment two suggests a degree of deference be employed in a courts review of director decisions:  A court should not be harsh in second guessing directors who in good faith make a judgment that proves incorrect.  Although some decisions turn out to be unwise or the result a mistake of judgment, it is unreasonable to reexamine these decisions with the benefit of hindsight.
The statute clearly provides protection to a director who, acting in good faith, makes informed decisions in exercising his or her judgment.  Once the requirements of section 33-31-830 are met, it precludes review or second-guessing of the directors decisions.  In the present case, the undisputed evidence shows the individual directors consulted with various professionals when confronted with financial or construction issues relating to the Association.  The types of experts consulted corresponded with the issues the Board sought to resolve.  For example, the directors sought advice from attorneys for legal questions, accountants and CPAs for financial questions, and architects for construction issues.  Because there was undisputed evidence that the directors sought outside advice in order to make informed maintenance and financial decisions for the Association, the individual directors were protected from liability.  
Appellants, nevertheless, argue that the individual directors reliance upon experts was unreasonable because they had outside knowledge of the maintenance problems at Dockside.  Thus, Appellants argue, the directors did not comply with the statute, were not immune from liability, and were not entitled to summary judgment.  Knowledge of the maintenance problems alone is not sufficient to remove the immunity provided by section 33-31-830(d).  The burden to prove the directors did not act in good faith, and their reliance upon experts was not in good faith, was on Appellants.  See Dockside Assn, Inc. v. Detyens, 294 S.C. 86, 87, 362 S.E.2d 874, 874 (1987) (reviewing a boards protection under the business judgment rule, the court held that the burden was on the party challenging the boards actions to prove a lack of good faith in the exercise of judgment, not upon the board to prove good faith).  Although Appellants offered their affidavits and the affidavit of one expert opining that there were maintenance problems at Dockside that could have been handled differently, no evidence was offered indicating the directors reliance upon experts was misplaced.  
Therefore, we hold the undisputed facts established compliance with section 33-31-830(b).  By relying upon the advice of various individuals with particular professional competence and expertise, as a matter of law, the individual directors discharged their duties in good faith, with the care of an ordinarily prudent person and in the best interest of Dockside.  Because compliance with this statute provides immunity from liability, we hold the grant of summary judgment to the individual directors was proper.[2]  Moreover, the common law business judgment rule would protect the respondents notwithstanding their alleged noncompliance with section 33-31-830.  
II.  The Corporation
Appellants argue the circuit court improperly granted summary judgment to the corporate entity, the Association, because corporations do not have protection under the business judgment rule.  We disagree.
The business judgment rule precludes judicial review of actions taken by a corporate governing board absent a showing of a lack of good faith, fraud, self-dealing or unconscionable conduct.  Dockside Assn, Inc., v. Detyens, 294 S.C. at 87, 362 S.E.2d at 874.  Although there are no cases directly on point, our state courts have implied the business judgment rule applies to corporate entities.  In Seabrook Island Property Owners Association v. Pelzer, 292 S.C. 343, 356 S.E.2d 411 (Ct. App. 1987), a landowner appealed the grant of summary judgment to the homeowners association in an action to collect unpaid assessments.  In reversing the grant of summary judgment to the association, the court noted that although the business judgment rule would apply to corporate actions taken pursuant to the bylaws and covenants, it would not apply to protect the corporation from acts outside the corporations authority.  Seabrook Island, 292 S.C. at 347-48, 356 S.E.2d at 414 (The business judgment rule applies to intra vires action of the corporation, not to ultra vires acts.); see Cedar Cove Efficiency Condo. Assn, Inc. v. Cedar Cove Prop., Inc., 558 So. 2d 475, 479 (Fla. Ct. App. 1990) (applying the business judgment rule to homeowners associations decisions on maintenance, repair, and assessment issues).  
Further, since a corporation may only act through its directors, the application of the business judgment rule to the corporate entity with regard to the business judgments of the directors is appropriate.[3]  See Chapman-Storm Lumber Corp. v. Minnesota-South Carolina Land & Timber Co., 183 S.C. 31, 34, 190 S.E. 117, 118 (1937) (noting that where a corporation and its agent are sued together for the act of the agent and the agent is found to be without blame, the corporation cannot be held liable for the agents conduct).  
In the instant case, the suit against the Association and the individual directors only complained about the actions of the individual directors.  No evidence was produced at the summary judgment hearing to show the Association was separately negligent.  Accordingly, we find the business judgment rule precludes judicial review of the action taken by the Board, and, thus, the circuit court correctly granted summary judgment to the Association.  
III. Discovery
Appellants argue the circuit court erred in granting summary judgment because they did not have a full and fair opportunity to conduct discovery.  We disagree.
As previously discussed, summary judgment is a drastic remedy and should not be granted where the nonmoving party has not had the opportunity to conduct discovery.  Dawkins, 354 S.C. at 69, 580 S.E.2d at 439.  The burden is upon the nonmoving party, however, to show that further discovery will likely uncover additional relevant evidence, the request for further discovery is not an attempt to engage in a fishing expedition, and the nonmoving party was not dilatory in pursuing discovery.  Id.; Baughman, 306 S.C. at 112, 410 S.E.2d at 544.  
The litigation in this case began in December 2001 when Appellants filed the underlying action.  In July 2002, the Association and the individual directors responded to Appellants discovery requests by answering interrogatories and providing Appellants with access to over 50,000 documents, including Association minutes, every file maintained on all homeowners, all financial records, a list of all current and former directors, and a list of the Associations experts.  The separate federal lawsuit between the Association and its liability carrier was filed in December 2002.  Thereafter, the Association and individual directors filed motions to compel, for a more definite statement, and for summary judgment.  Appellants then moved for a stay of the underlying litigation pending the outcome of the federal suit on February 27, 2003, but it does not appear from the record that the circuit court ever ruled upon this motion.  The federal court issued a declaratory judgment that the Associations liability carrier had a duty to defend the underlying action on April 3, 2003.  
The Association and the individual directors thereafter filed a memorandum in support of the motion for summary judgment on July 1, 2003, and Appellants served deposition notices on July 3, 2003.  A hearing on the motion for summary judgment was held July 9, 2003, and the circuit court granted summary judgment to the individual directors.   
Initially, this issue is not preserved for review.  Although Appellants mentioned in their memorandum in opposition to the motion for summary judgment that granting the motion was premature because discovery was pending, the circuit court order granting summary judgment to the individual directors did not address the issue of adequacy of discovery.  Appellants did not point out the failure to address the question of adequacy of discovery in their motion for reconsideration.  Further, Appellants did not attempt to protect their interests by requesting a continuance until discovery could be completed.  Because this question was never ruled upon by the circuit court, it is not preserved for appellate review.  Degenhart v. Knights of Columbus, 309 S.C. 114, 118, 420 S.E.2d 495, 497 (1992) (noting that the question of whether summary judgment was premature pending a ruling on an outstanding motion to compel discovery was not preserved where the party opposing summary judgment did not move for a continuance pending the outcome of the motion to compel and the issue was never ruled upon by the court).  
          In any event, this argument fails on the merits.  Appellants argue that they did not have enough time to review the thousands of pages of documents submitted by the Association and the individual directors, that the discovery process was halted pending the federal lawsuit, and that further discovery would reveal that the individual directors were grossly negligent.  Appellants were aware of the names of the individual directors nearly a year before the summary judgment hearing, but they did not move to depose individual directors until after the motion for summary judgment was filed.  Further, although Appellants filed a motion to stay the state court proceedings pending the outcome of the federal proceedings, nothing in the record indicates that motion was ever ruled upon.  Appellants give no real justification for the delay in deposing witnesses, and they merely argue that they may find information to prove the individual directors grossly negligent.  We find Appellants have failed to meet their burden to show that summary judgment was premature.
CONCLUSION
Therefore, the circuit courts grant of summary judgment is 
AFFIRMED.
ANDERSON, BEATTY, and SHORT, JJ., concur. 

[1] The Respondents Douglas Berlinsky, Wilbur Burbage, II, Francis G. Cain, Jr., Lydia P. Davidson, William B. Ellison, Grant D. Small; James F. Spann, and Jonathan L. Yates all served as directors at some time from 1990-1999.
[2]  The General Assembly has provided further protection to directors of nonprofit corporations by enacting South Carolina Code section 33-31-834.  That section provides that directors of nonprofit organizations are immune from suits arising from the conduct of the affairs of the organization unless the directors conduct amounts to willful, wanton, or gross negligence.  S.C. Code Ann. § 33-31-834 (Supp. 2004).  Although this section was presented to the circuit court to further support the individual directors motion for summary judgment, the court did not rely upon this section in ruling.  
[3]  In finding our courts recognize application of the business judgment rule to corporate entities, we focus only on the exercise of due care in making routine business judgments for the benefit of the corporation.  Our finding does not extend the business judgment rule to protect corporations from tort liability or for actions taken outside the scope of the corporations authority, with corrupt motive, or in bad faith.